1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KATHLEEN VICTORIA ESPARZA,                    No.  2:23-cv-00681 AC

12              Plaintiff,

13        v.                                       ORDER

14   MARTIN O'MALLEY, Acting
     Commissioner of Social Security,

15
                Defendant.
16

17        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

18   ("Commissioner"), denying her application for disability insurance benefits ("DIB") under

19   Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1]  For the reasons that follow,

20   plaintiff's motion for summary judgment will be GRANTED, and defendant's cross-motion for

21   summary judgment will be DENIED.

22                              I.  PROCEDURAL BACKGROUND

23        Plaintiff applied for DIB on September 6, 2017.  Administrative Record ("AR") 70.[2]  The

24   disability onset date was alleged to be June 29, 2011.  AR 70.  The application was disapproved

25   initially and on reconsideration.  AR 103-106, 109-113.  On October 31, 2018, ALJ Vincent

26   ─────────────────
     [1]  DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and
27   who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New
     York, 476 U.S. 467, 470 (1986).
28   [2]  The AR is electronically filed at ECF Nos. 8 (AR 1 to AR 2694).

                                                   1

1   Misenti presided over the hearing on plaintiff's challenges.  AR 34-68 (transcript).  On March 18,

2   2019, the ALJ found plaintiff "not disabled" under Section 216(i) and 223(d) of Title II of the

3   Act, 42 U.S.C. §§ 416(i), 423(d).  AR 13-28 (decision).  On February 14, 2022, the United States

4   District Court for the Eastern District of California reversed the Commissioner's decision and

5   remanded for further administrative proceedings.  AR 1666.

6        On November 30, 2022, ALJ Vincent Misenti presided over the hearing that came before

7   him on remand from the Appeals Council pursuant to the remand from this court.  AR 1587-1613

8   (transcript).  Plaintiff, who appeared with her counsel Kelli Morris, was present at the hearing.

9   AR 1589.  Shirley K. Ripp, a Vocational Expert ("VE"), also testified.  AR 1604.  On January 5,

10  2023, the ALJ found plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the

11  Act, 42 U.S.C. §§ 416(i), 423(d).  AR 1559-79 (decision).  The Appeals Council did not assume

12  jurisdiction of the remanded case, leaving the ALJ's decision as the final decision of the

13  Commissioner of Social Security.  See 20 C.F.R. § 404.984(a).

14       Plaintiff filed this action on April 12, 2023.  ECF No. 1; see 42 U.S.C. § 405(g).  The

15  parties consented to the jurisdiction of the magistrate judge.  ECF No. 7.  The parties' cross-

16  motions for summary judgment, based upon the Administrative Record filed by the

17  Commissioner, have been fully briefed.  ECF Nos. 11 (plaintiff's summary judgment motion), 17

18  (Commissioner's summary judgment motion), 18 (plaintiff's reply).

19                        II.  FACTUAL BACKGROUND

20       Plaintiff was born in 1963, and accordingly was, at age 53, a person closely approaching

21  advanced age, when she filed her application.[3]  AR 69.  Plaintiff has at least a high school

22  education.  AR 39.  Plaintiff worked for human resources as an account specialist.  AR 82, 1592.

23                         III.  LEGAL STANDARDS

24       The Commissioner's decision that a claimant is not disabled will be upheld "if it is

25  supported by substantial evidence and if the Commissioner applied the correct legal standards."

26  Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

27

28  [3]  See 20 C.F.R. § 404.1563(d) ("person closely approaching advanced age").

                                          2

1  Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews

2  v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

3  Substantial evidence is "more than a mere scintilla," but "may be less than a

4  preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such

5  evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v.

6  Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the

7  record can constitute substantial evidence, only those 'reasonably drawn from the record' will

8  suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

9  Although this court cannot substitute its discretion for that of the Commissioner, the court

10  nonetheless must review the record as a whole, "weighing both the evidence that supports and the

11  evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS,

12  846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The

13  court must consider both evidence that supports and evidence that detracts from the ALJ's

14  conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

15  "The ALJ is responsible for determining credibility, resolving conflicts in medical

16  testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th

17  Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of

18  which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart,

19  278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the

20  ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn

21  v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.

22  2003) ("It was error for the district court to affirm the ALJ's credibility decision based on

23  evidence that the ALJ did not discuss").

24  The court will not reverse the Commissioner's decision if it is based on harmless error,

25  which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

26  ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

27  2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

28  Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

1                                          IV.  RELEVANT LAW

2          Disability Insurance Benefits and Supplemental Security Income are available for every

3    eligible individual who is "disabled."  42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI).  Plaintiff

4    is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically

5    determinable physical or mental impairment . . ..'"  Bowen v. Yuckert, 482 U.S. 137, 140 (1987)

6    (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

7          The Commissioner uses a five-step sequential evaluation process to determine whether an

8    applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4);

9    Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation

10   process to determine disability" under Title II and Title XVI).  The following summarizes the

11   sequential evaluation:

12             Step one: Is the claimant engaging in substantial gainful activity?  If
               so, the claimant is not disabled.  If not, proceed to step two.
13
     20 C.F.R. § 404.1520(a)(4)(i), (b).
14
               Step two: Does the claimant have a "severe" impairment?   If so,
15             proceed to step three.  If not, the claimant is not disabled.

16   Id. §§ 404.1520(a)(4)(ii), (c).

17             Step three: Does the claimant's impairment or combination of
               impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404,
18             Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to
               step four.
19
     Id. §§ 404.1520(a)(4)(iii), (d).
20
               Step four: Does the claimant's residual functional capacity make him
21             capable of performing his past work?  If so, the claimant is not
               disabled.  If not, proceed to step five.
22
     Id. §§ 404.1520(a)(4)(iv), (e), (f).
23
               Step five: Does the claimant have the residual functional capacity
24             perform any other work?  If so, the claimant is not disabled.  If not,
               the claimant is disabled.
25
     Id. §§ 404.1520(a)(4)(v), (g).
26

27         The claimant bears the burden of proof in the first four steps of the sequential evaluation

28   process.  20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or

                                                        4

1    disabled"), 416.912(a) (same); <u>Bowen</u>, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the

2    sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not

3    disabled and can engage in work that exists in significant numbers in the national economy."  <u>Hill</u>

4    <u>v. Astrue</u>, 698 F.3d 1153, 1161 (9th Cir. 2012); <u>Bowen</u>, 482 U.S. at 146 n.5.

5                                        V.  THE ALJ's DECISION

6              The ALJ made the following findings:

7                        1. The claimant last met the insured status requirements of the Social
                         Security Act on December 31, 2016.  (Exhibit 6D; 14D)
8
                         2. [Step 1] The claimant did not engage in substantial gainful activity
9                        during the period from her alleged onset date of June 29, 2011
                         through her date last insured of December 31, 2016 (20 CFR
10                       404.1571 *et seq.*).  (Exhibit 6D-14D)

11                       3. [Step 2] Through the date last insured, the claimant had the
                         following severe impairments: left shoulder arthritis; cervical,
12                       thoracic, and lumbar spine degenerative disc disease; bilateral hip
                         arthritis; posttraumatic stress disorder; anxiety; and depression (20
13                       CFR 404.1520(c)).

14                       4. [Step 3] Through the date last insured, the claimant did not have
                         an impairment or combination of impairments that met or medically
15                       equaled the severity of one of the listed impairments in 20 CFR Part
                         404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and
16                       404.1526).

17                       5.  [Residual Functional Capacity ("RFC")]  After  careful
                         consideration of the entire record, the undersigned finds that, through
18                       the date last insured, the claimant has the residual functional capacity
                         to perform medium work as defined in 20 CFR 404.1567(c) except
19                       the claimant could occasionally perform bilateral overhead reaching.
                         She could frequently reach in all other directions.  The claimant
20                       could frequently balance, stoop, kneel, crouch, crawl, and climb
                         ramps and stairs.  She could occasionally climb ladders and
21                       scaffolds.  The claimant could view a computer screen occasionally.
                         The claimant could not work around unprotected heights.  She should
22                       avoid concentrated exposure to moving mechanical parts.  The
                         claimant could understand, remember, and carry out simple, routine,
23                       and repetitive tasks using judgment limited to simple work-related
                         decisions.  The claimant could interact with the public occasionally.
24
                         6. [Step 4] Through the date last insured, the claimant was unable to
25                       perform any past relevant work (20 CFR 404.1565).

26                       7. [Step 5] The claimant was born on [in] 1963 and was 47 years old,
                         which is defined as younger individual age 18-49, on the alleged
27                       onset date.  The claimant subsequently changed age category to
                         closely approaching advanced age on the date last insured (20 CFR
28                       404.1563).

                                                  5

1

2

      8. [Step 5, continued] The claimant has at least a high school education (20 CFR 404.1564).

      9. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

3

4

5

6

      10. [Step 5, continued] Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a).

7

8

9

10

      11. The claimant was not under a disability, as defined in the Social Security Act, at any time from June 29, 2011, the alleged onset date, through December 31, 2016, the date last insured (20 CFR 404.1520(g)).

11

AR 1561-1578.

12

      As noted, the ALJ concluded that plaintiff was "not disabled" under Title II of the Act.

13

AR 1579.

14

## VI.  ANALYSIS

15

      Plaintiff alleges that the ALJ erred by (1) rejecting every expert medical opinion of record

16

and instead relying on lay analysis; and (2) discounting plaintiff's subjective testimony without

17

clear and convincing reasons.  ECF No. 11-1 at 1, 4.  Plaintiff argues that the case should be

18

remanded for further proceedings.  Id. at 24.

19

      A.  The ALJ Erred Regarding Medical Opinions

20

      Plaintiff first contends that the ALJ erred in formulating plaintiff's RFC because he

21

rejected every medical opinion on record.  More specifically, plaintiff argues that the ALJ

22

erroneously rejected the opinions of Drs. Hseih and Anderson, which supported far greater

23

restrictions than those issued by the ALJ.  Id at 18-19.  The court agrees that the ALJ erred in his

24

treatment of the medical opinions.

25

      With respect to medical opinions, new regulations apply to claims filed on or after March

26

27, 2017, which change the framework for evaluation of medical opinion evidence.  Revisions to

27

Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01

28

(Jan. 18, 2017); 20 C.F.R. § 404.1520c.  The new regulations provide that the ALJ will no longer

1    "give any specific evidentiary weight ... to any medical opinion(s)" but instead must consider and

2    evaluate the persuasiveness of all medical opinions or prior administrative medical findings from

3    medical sources and evaluate their persuasiveness.  Revisions to Rules, 2017 WL 168819, 82 Fed.

4    Reg. 5844, at 5867-68; see 20 C.F.R. § 404.1520c(a) and (b).

5           The factors for evaluating the persuasiveness of a physician opinion include

6    supportability, consistency, relationship with the claimant (including length of the treatment,

7    frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of

8    an examination), specialization, and "other factors that tend to support or contradict

9    a medical opinion or prior administrative medical finding" (including, but not limited to,

10   "evidence showing a medical source has familiarity with the other evidence in the claim or an

11   understanding of our disability program's policies and evidentiary requirements").  20 C.F.R. §

12   404.1520c(c)(1)-(5).  Supportability and consistency are the most important factors, and therefore

13   the ALJ is required to explain how both factors were considered.  20 C.F.R. § 404.1520c(b)(2).

14   Supportability and consistency are defined in the regulations as follows:

15           Supportability.  The more relevant the objective medical evidence
             and supporting explanations presented by a medical source are to
16           support his or her medical opinion(s) or prior administrative
             medical finding(s), the more persuasive the medical opinions or
17           prior administrative medical finding(s) will be.

18           Consistency.  The more consistent a medical opinion(s) or prior
             administrative medical finding(s) is with the evidence from other
19           medical sources and nonmedical sources in the claim, the more
             persuasive the medical opinion(s) or prior administrative medical
20           finding(s) will be.

21

22   20 C.F.R. §404.1520c(c)(1)-(2).

23          The ALJ may, but is not required to, explain how the other factors were considered.  20

24   C.F.R. § 404.1520c(b)(2).  However, when two or more medical opinions or prior administrative

25   findings "about the same issue are both equally well-supported ... and consistent with the record

26   ... but are not exactly the same," the ALJ must explain how "the other most persuasive factors in

27   paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. § 404.1520c(b)(3).  The Ninth

28   Circuit has confirmed that the new regulatory framework eliminates the "treating physician rule"

1    and displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or

2    "clear and convincing" reasons for rejecting a treating or examining doctor's opinion.  Woods v.

3    Kijakazi, 32 F.4th 785 (9th Cir. 2022).  Still, in rejecting any medical opinion as unsupported or

4    inconsistent, an ALJ must provide an explanation supported by substantial evidence.  Id.  In sum,

5    the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from

6    each doctor or other source ... and 'explain how [he or she] considered the supportability and

7    consistency factors' in reaching these findings."  Id.  (citing 20 C.F.R. §§ 404.1520c(b),

8    404.1520(b)(2)).

9         Here, the ALJ reviewed found the medical opinion of workers' compensation physician

10   Dr. Jeffrey J. Anderson unpersuasive (AR 1571), the medical opinions of Agency medical

11   consultants Dr. Y. Ruo and Dr. L. Suniga unpersuasive (AR 1571), the  medical opinion of pain

12   management provider Dr. Ray Hsieh unpersuasive (AR 1572-73), the medical opinion of pain

13   management provider Dr. Justin Lo unpersuasive (AR 1573-74), and the medical opinion of pain

14   management provider Dr. John Massey unpersuasive (AR 1573).  Plaintiff points specifically to

15   the ALJ's insufficient analysis with respect to the rejection of the opinions of Dr. Anderson and

16   Dr. Hseih.

17        With respect to Dr. Anderson's evaluation of plaintiff's abilities (AR 318), the ALJ found

18   the opinion to be unpersuasive because the recommendation that plaintiff be provided with

19   extreme work accommodations was a "temporary opinion" in response to plaintiff's workers'

20   compensation claim.  AR 1571.  The ALJ provided no other rationale for discounting the opinion.

21   Id.  The opinion itself shows that Dr. Anderson found that plaintiff was not yet "permanent and

22   stationary" for the purpose of a workers' compensation disability rating as of the date of

23   evaluation, and that she would need two to three months of pain management before her

24   condition would be stable enough to rate.  AR 318.  Dr. Anderson stated plaintiff could return to

25   work but would "need to alternate between sitting and standing every 30 minutes, could only lift

26   up to 15 pounds," and should only work "for four hours at a time;" if she could tolerate that,

27   another assessment could be made to see if plaintiff could tolerate more.  Id.  Plaintiff argues that

28   the term "temporary" should not be construed literally, since the outcome of such

1    recommendation was based on the cumulative effect of the "temporary" assessments.  ECF No.

2    11-1 at 22.

3         ALJs are required to address the supportability and consistency the opinion provided

4    when determining the amount of weight to provide the opinion.  20 C.F.R. § 404.1520c(b)(2).  It

5    is indisputable that the ALJ failed to articulate the supportability and consistency of Dr.

6    Anderson's medical opinion.  The ALJ's sole justification as to why he rejected the opinion was

7    that "the opinion was issued as a temporary opinion based on the claimant's return to her former

8    job."  AR 1571.  This conclusory statement does not address consistency or supportability to any

9    meaningful extent.  Every medical opinion, even if it gives predictions regarding the future,

10   ultimately documents a point in time.  The fact that Dr. Anderson's medical opinion was specific

11   to a point in time, alone, does not constitute grounds to discount the opinion without considering

12   it within the context of plaintiff's other records and opinions.  The ALJ was required to explain

13   his rejection of the opinion within the context of the overall landscape of plaintiff's medical

14   history.  The ALJ did not do that.  Therefore, rejecting the medical opinion of Dr. Anderson was

15   error.

16        With respect to Dr. Hseih, the ALJ reviewed multiple separate medical opinions and

17   stated he was unpersuaded by each of them.  AR 1571-72.  Plaintiff had been a patient of Dr.

18   Hseih's since 2005.  AR 2575.  Dr. Hseih treated plaintiff for low back pain and bilateral hip

19   pain; neck and upper back pain; lumbar disc disease, bilateral sacroiliac joint pain; greater

20   trochanteric bursitis, a right rotator cuff repair, cervical facet disease, possible cervical

21   radiculopathy, and myofascial pain.  Id.  On January 15, 2015, Dr. Hsieh opined that plaintiff was

22   unable to work because of pain; the ALJ rejected this opinion because it stated an opinion as to

23   the ultimate issue of disability, which is reserved for the commissioner.  AR 1572, 2575.

24        Dr. Hsieh provided two opinions in 2018.  On August 3, 2018, the doctor opined that

25   plaintiff could not lift, push, or pull more than 10 pounds.  She could not bend, squat, twist or

26   reach overhead.  She could stand for no longer than five to 10 minutes, she could sit for no longer

27   than 20 minutes, and she could keyboard for no more than five minutes.  Furthermore, the

28   claimant could not perform light, medium, or heavy activity and she could perform sedentary

1    activity for one half hour.  AR 1572, 2248-49.  On September 17, 2018, Dr. Hsieh opined that

2    plaintiff could walk one block and she could stand and/or walk for less than two hours in an

3    eight-hour workday.  She could sit for about two hours in an eight-hour workday, would need to

4    shift positions at will and take unscheduled breaks regularly, and could lift and carry less than 10

5    pounds occasionally.  She could never use her upper extremities for grasping, fine manipulation,

6    or reaching and could never perform any postural movements.  She would have good days and

7    bad days would likely be absent from work more than twice a month.  AR 1504-06.  Finally, Dr.

8    Hsieh completed a life insurance from on April 15, 2020, in which he stated that plaintiff was

9    incapable of minimal or sedentary activity.  AR 1571, 2375-76.  The ALJ rejected the 2020

10   opinion as conclusory.  AR 1571.

11          The ALJ's analysis is inadequate with respect to Dr. Hseih's 2018 opinions.  The ALJ

12   stated the medical opinions provided in 2018 were unpersuasive because they were out of

13   proportion to the overall evidence.  AR 1572.  "An ALJ cannot reject an examining or treating

14   doctor's opinion as unsupported or inconsistent without providing an explanation supported by

15   substantial evidence."  Woods v. Kijakazi, 32 F.4th 785 (9th Cir. 2022), see also SSR 96-8p ("If

16   the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain

17   why the opinion was not adopted.").  The ALJ sated that the "two opinions of Dr. Hsieh in 2018

18   are out of proportion to the overall evidence of record, including the mild imaging findings

19   (Exhibits 4F/36, 155, 156, 85, 245, 246, 255).  Moreover, the claimant's physical examination

20   findings consistently indicated that she had normal strength, normal sensation, and normal

21   reflexes (Exhibits 2F/90-107, 109-116; 4F/110, 322, 391, 415, 428; 14F/23).  In addition, these

22   opinions were issued several years after the date last insured and it is not clear that it applied to

23   the relevant period."  AR 1572.  This rejection is inadequate because the ALJ fails to explain how

24   the cited portions of the record demonstrate the medical opinion is "out of proportion" with the

25   evidence or how those records undermine Dr. Hseih's assigned limitations.  The records cited do

26   not clearly or obviously support the ALJ's conclusion.  For example, the ALJ cites Exhibit

27   4F/155 and 156 (AR 653-54), which is an MRI Lumbar Canal imaging report that facet

28   degenerative change bilaterally at this level with mild inflammatory facet arthropathy and small

1    disc bulges and annular tears throughout the lumbar spine.  The ALJ did not adequately support

2    or explain how the medical evidence contradicts Dr. Hseih's medical opinion, therefore, the court

3    finds the ALJ committed harmful error.

4              B.   The ALJ Inadequately Supported Rejection of Plaintiff's Subjective Testimony

5              The ALJ provided insufficient rationale for rejecting plaintiff's subjective testimony

6    regarding her impairments.  Evaluating the credibility of a plaintiff's subjective testimony is a

7    two-step process: First the ALJ must "determine whether the claimant has presented objective

8    medical evidence of an underlying impairment which could reasonably be expected to produce

9    the pain or other symptoms alleged . . . In this analysis, the claimant is not required to show that

10   her impairment could reasonably be expected to cause the severity of the symptom she has

11   alleged; she need only show that it could reasonably have caused some degree of the

12   symptom."  Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted).

13   Objective medical evidence of the pain or fatigue itself is not required.  Id.  (internal citations

14   omitted).  Second, if the ALJ does not find evidence of malingering, the ALJ may only reject the

15   claimant's testimony by offering "specific, clear and convincing reasons for doing

16   so."  Id.  (internal citations omitted).  While an ALJ's credibility finding must be properly

17   supported and sufficiently specific to ensure a reviewing court the ALJ did not "arbitrarily

18   discredit" a claimant's subjective statements, an ALJ is also not "required to believe every

19   allegation" of disability.  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  So long as

20   substantial evidence supports an ALJ's credibility finding, a court "may not engage in second-

21   guessing."  Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).

22             The ALJ summarized plaintiff's testimony as follows:

23
24             At the hearing in 2018, the claimant testified that she was unable to work because of bilateral hip problems, left shoulder arthritis, left wrist carpal tunnel, arthritis in her neck, mid-back pain, fibromyalgia, thoracic outlook syndrome, posttraumatic stress disorder, depression, and migraines.
25

26             Concerning her mental health, the claimant testified that she was depressed all the time and she had panic attacks and nightmares at
27   night. She testified that she could go to the store and out to eat at a restaurant every six weeks. The claimant testified that she visited
28   family infrequently. She testified that she could not concentrate.

> The claimant testified that she could not wash her hair, put on clothes, do her make-up, or work in her garden.
>
> At the hearing in November 2022, the claimant testified that she stopped working because her employer was no longer willing to accommodate her limitations, which included frequent breaks, no crawling, no sitting more than 20 minutes, using the elevator rather than the stairs, and no heavy lifting. The claimant testified that she startled and cried frequently such that would have to take a break from work to get herself back together. She testified that cleaning her house, cooking, and walking her dog also caused pain. The claimant testified that she had severe anxiety, depression, and posttraumatic stress disorder. She testified that she had nightmares, difficulty being around others, startle, and frequent crying. The claimant testified that sometimes she had difficulty with word finding, especially with people that she did not know.

AR 1566.

The ALJ discounted plaintiff's subjective testimony by providing a detailed review of the relevant medical record and concluding that the "claimant's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record." AR 1566.[4]  However, while the ALJ went into detail regarding objective clinical evidence, the ALJ referenced *only* the objective clinical evidence as a basis for discounting plaintiff's subjective pain testimony. AR 1566-70.  A lack of objective support, on its own, is not a sufficient basis for rejecting subjective pain testimony. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain.").  Here, the ALJ relied only on the lack of objective support to discredit plaintiff's pain testimony. For this reason, the court finds that the ALJ erred in discounting plaintiff's subjective testimony.

C.  Remand

The undersigned agrees with plaintiff that the ALJ's error regarding the medical opinion evidence and rejection of plaintiff's subjective testimony is harmful and that remand for further proceedings by the Commissioner is necessary.  An error is harmful when it has some

---

[4]  The Commissioner, in his brief, argues that the court should evaluate the ALJ's rejection of plaintiff's testimony as though the ALJ had found evidence of malingering, because the record contains evidence of malingering.  ECF No. 17 at 4.  The court declines to make an independent finding of malingering; the ALJ made no such finding.  AR 1571.

consequence on the ultimate non-disability determination.  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006).  The ALJ's error here was harmful because the opinion of Drs. Hseih and Anderson, as well as plaintiff's pain testimony, properly considered, may very well result in a more restrictive residual functional capacity assessment, which may in turn alter the finding of non-disability.

It is for the ALJ to determine in the first instance whether plaintiff has severe impairments and, ultimately, whether she is disabled under the Act.  See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) ("the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court").  "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful."  Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).  Here, the ALJ failed to properly consider the medical opinion of Drs. Hsieh and Anderson and failed to properly evaluate plaintiff's pain testimony.  Further development of the record consistent with this order is necessary, and remand for further proceedings is the appropriate remedy.

## VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 11), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 17), is DENIED;

3. The matter is REMANDED to the Commissioner for further proceedings, and

4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

SO ORDERED.

DATED: April 17, 2024

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

13